# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No._____ |
| ) | |
| GEORGE IBEKIE, an Individual, DIVVY ) | |
| RIDE, INC., an Illinois Corporation, , and ) | |
| GREEN AIRPORT SHUTTLE LLC, an ) | |
| Illinois Limited Liability Company ) | JURY TRIAL DEMANDED |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff City of Chicago ("The City") brings this complaint for injunctive and monetary relief against George Ibekie ("Mr. Ibekie"), Divvy Ride, Inc. ("Divvy Ride"), and Green Airport Shuttle LLC ("Green Airport Shuttle") (collectively, "Defendants"). For its complaint herein against Defendants, The City alleges as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over The City's claims under 15 U.S.C. § 1121 and under 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over the Illinois state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) under general principles of supplemental and pendent jurisdiction, and because such claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. This Court has personal jurisdiction over the Defendants because they reside, and their acts giving rise to the claims occurred, in Illinois.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because the claims alleged in the Complaint arose, at least in part, in this District, and because this Court

has personal jurisdiction over Defendants.

## JURY DEMAND

4. The City demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## PARTIES

5. The City is a municipal corporation and home rule unit of local government existing under the Constitution of the State of Illinois.

6. Upon information and belief, Mr. Ibekie is an individual residing at 2582 Golf Ridge Cir., Naperville, IL, 60563.

7. Divvy Ride is a corporation organized under the laws of the State of Illinois with a registered agent address of 2582 Golf Ridge Cir., Naperville, IL, 60563.

8. Green Airport Shuttle is a limited liability company organized under the laws of the State of Illinois with its principal place of business at 1444 N Farnsworth Avenue, Suite 119, Aurora, IL 60505.

## NATURE OF CASE

9. This is an action for: trademark infringement and unfair competition in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); unfair trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILL. COMP. STAT. 510, *et seq*.; unfair trade practices in violation of the common law of the State of Illinois; and cancellation of United States Trademark Registration No. 4,837,493 pursuant to Section 14 of the Lanham Act, 15 U.S.C. §1064 and Section 37 of the Lanham Act, 15 U.S.C. § 1119.

10. This action arises out of the knowing and willful violation by Mr. Ibekie, individually and/or through his instrumentalities Divvy Ride and/or Green Airport Shuttle (collectively, "Defendants"), of The City's prior rights in its well-known and distinctive DIVVY

and DIVVY and Design trademarks ("DIVVY Marks") through the Defendants' unauthorized use in commerce of the confusingly similar mark DIVVY RIDE and/or DIVVYRIDE (collectively, the "DIVVY RIDE Mark") in the promotion, marketing, and advertising of related and similar goods and services. The City's DIVVY and Design trademark is reproduced below:

DIVVY

11. Beyond simply using a mark that sounds identical to The City's DIVVY Mark, Defendants knowingly and willfully heighten the likelihood of customer confusion by using, in promotional materials for their services, the substantially identical shade of the color blue ("Chicago Blue") that The City uses with its DIVVY Marks, and the tagline "Chicago's Rideshare App."

12. Mr. Ibekie initially registered <divvyride.com> as a domain name ("Divvy Ride Website"). "DivvyRide" is currently identified as the Registrant Organization, and Defendants appear to be using the domain name. Mr. Ibekie has also improperly obtained a federal trademark registration for DIVVY RIDE.

13. Defendants' use of the DIVVY RIDE Mark is likely to cause consumer confusion (and in fact has already caused confusion within the industry) by allowing consumers to believe, erroneously, that The City is the source of, or otherwise sponsors or is associated with, Defendants' services, thus confusing consumers and jeopardizing The City's goodwill in the DIVVY Marks.

14. In addition, Defendants have intentionally profited from their unauthorized use of the DIVVY RIDE Mark and the infringing domain name, and have made unauthorized commercial use of the DIVVY RIDE Mark in Illinois to Defendants' benefit and to the detriment of The City and consumers, in violation of the laws set forth above.

3

**FACTUAL BACKGROUND**

A. *<u>Creation of The City's Bicycle Sharing System</u>*

15. In May 2011, The City set a goal for Chicago to become the most bicycle-friendly city in the United States. To help achieve this goal, The City developed a strategy that resulted in the establishment of a bicycle sharing system whereby riders, including Chicagoland residents and visitors alike, can rent and return high quality bicycles from bicycle stations in the Chicagoland area ("Bicycle Sharing System").

16. The City's plan to establish a Bicycle Sharing System was widely known and eagerly anticipated by both the bicycle riding community and the Chicagoland community at large.

B. *<u>Background and Extensive Use of The City's DIVVY Marks</u>*

17. The City selected the DIVVY Marks as the brand for the Bicycle Sharing System. In addition, The City chose to use a distinctive look as the trade dress for the bicycles within the Bicycle Sharing System. This trade dress prominently features the following: Chicago Blue and white color scheme; chevron designs in the Chicago Blue color; four (4) white stars; and a black seat and handle bars, ("Bicycle Trade Dress"). (E.g. Exh. A.) In conjunction with its licensee, Motivate International, Inc. ("Motivate"), The City uses in commerce, and therefore The City owns, the DIVVY Marks and the Bicycle Trade Dress.

18. From the inception of the Bicycle Sharing System, The City has prominently featured the DIVVY Marks and Bicycle Trade Dress in an extensive publicity and marketing campaign, designed to build public awareness and anticipation for the Bicycle Sharing System. For example, on June 14, 2013, the Bicycle Sharing System was the main topic of The City's Bike-to-Work-Week Rally on Daley Center Plaza. Mayor Emanuel and (then) U.S. Secretary of

Transportation, Ray LaHood, introduced the Bicycle Sharing System to hundreds of attendees, with a row of bicycles bearing the DIVVY Marks and Bicycle Trade Dress lined up in front of their podium. The introduction prominently featured the DIVVY Marks. The Rally was covered by local news television, web, and print media outlets.

19. The City prominently featured the DIVVY Marks and Bicycle Trade Dress on various social media outlets, including Facebook, Twitter, and Instagram. The City also launched a website, www.divvybikes.com ("Divvy Bikes Website"), that prominently featured the DIVVY Marks and Bicycle Trade Dress, provided information about the Bicycle Sharing System, and information about bicycle transportation and safety.

20. In addition, The City used several eye-catching and clever print ads for the Bicycle Sharing System, prominently featuring the DIVVY Marks.

21. As a result of the extensive publicity and marketing campaigns, many news outlets featured stories regarding the DIVVY Marks and Bicycle Sharing System.

C. *Launch of Bicycle Sharing System*

22. Due to the extensive pre-launch activities and publicity described above, the launch of the Bicycle Sharing System under the DIVVY Marks was eagerly anticipated, garnering extensive media and consumer interest throughout the spring of 2013.

23. The City officially launched the Divvy Bike Website in the spring of 2013 and officially launched the Bicycle Sharing System on June 28, 2013.

24. Since the launch of the Bicycle Sharing System, The City, through its licensee Motivate, has consistently and prominently used in commerce the DIVVY Marks and the Chicago Blue color on bicycles, bicycle stations, bicycle vans that carry the bicycles, and in its marketing and promotional materials throughout the Chicagoland area. (E.g. Exh. B.)

25. The Bicycle Sharing System under the DIVVY Marks is also extensively promoted and marketed to tourists and the Chicago hotel industry and is prominently featured in national and international media. The City has displayed multiple advertisements for the Bicycle Sharing System featuring the DIVVY Marks at Chicago's O'Hare International Airport, many bus shelters, and on The City's digital billboard network. It is estimated that riders who reside outside of Chicago are responsible for about half of the 24-hour passes that have been sold at the Bicycle Sharing System stations since launching.

26. As a result of the extensive marketing, advertising, and promotional material, The City's distinctive and valuable DIVVY Marks, Bicycle Trade Dress, and prominent use of Chicago Blue in connection therewith are, and have been, in front of hundreds of thousands of members of the consuming public across the Chicago area *every day* since at least as early as June 28, 2013, over one thousand days.

27. Since launching the Divvy Bikes Website, divvybikes.com has been visited by nearly 1.3 million people from all over the world. The home page of the current website is attached as Exh C. Consumers have also downloaded and used a mobile application branded with the DIVVY Marks in connection with the bicycle sharing system.

28. Through its licensee, The City now operates a fleet of 4,760 bicycles and maintains 475 bicycle stations, all branded with the DIVVY Marks. The Bicycle Sharing System bicycles and stations are active 24 hours per day, 365 days per year, across more than 85 square miles of Chicago.

29. More than 7 million trips have been taken using the Bicycle Sharing System. The number grows daily.

30. The City has invested significant resources and effort to develop and foster the

reputation, recognition, and goodwill of the products and services provided under the Bicycle Sharing System, particularly under the City's DIVVY Marks and Bicycle Trade Dress. For example, The City has invested in advertising campaigns and promotional efforts including, but not limited to, social media campaigns, at-station advertising, information cards, and branded apparel. In addition, The City has set forth significant efforts to retain consumer goodwill by maintaining its commitment to excellent quality and reliability.

31. As a result of The City's extensive advertising and promotional efforts for its Bicycle Sharing System, the DIVVY Marks and Bicycle Trade Dress are widely recognized by members of the public as invaluable indicators of the source of the Bicycle Sharing System, and the associated goodwill. Indeed, the DIVVY Marks and Bicycle Trade Dress have come to be recognized by consumers who believe that goods and services provided under the DIVVY Marks and Bicycle Trade Dress originate with, or are approved or endorsed by, The City.

D. *The City Owns Federal Trademark Registrations For The DIVVY Marks*

32. On September 1, 2015, the United States Patent and Trademark Office ("USPTO") issued federal trademark registrations to The City for its DIVVY Marks. The City's federal trademark registrations include the following:

- Reg. No. 4,802,363 for DIVVY for use in connection with the following goods and services:

    o **International Class 9:** Downloadable mobile applications for use with bicycle rental services and for providing information regarding bicycle transportation and safety
    o **International Class 25**: Hats, t-shirts
    o **International Class 39:** Bicycle rental services
    o **International Class 42:** Providing a website featuring non-downloadable software for use in connection with bicycle rental services and for providing information regarding bicycle transportation and safety

- Reg. No.4,802,362 for DIVVY for use in connection with the following goods and services:

7

- **International Class 9**: Downloadable mobile applications for use with bicycle rental services and for providing information regarding bicycle transportation and safety
- **International Class 25:** Hats, t-shirts
- **International Class 39:** Bicycle rental services
- **International Class 42:** Providing a website featuring non-downloadable software for use in connection with bicycle rental services and for providing information regarding bicycle transportation and safety

Copies of the federal trademark registration certificates for the above marks are attached as Exh. D.

33. Pursuant to 15 U.S.C. § 1057(b), the federal trademark registration certificates for the Divvy Marks constitute *prima facie* evidence of the validity of those registrations, and of The City's ownership of the trademarks set forth therein.

E. <u>**The City Has Prior Rights In The DIVVY Marks**</u>

34. Upon information and belief, Defendants started their unlawful actions complained of herein long after The City first used and developed protectable rights in the DIVVY Marks and Bicycle Trade Dress.

F. <u>**Defendants' Business Conduct**</u>

35. Upon information and belief, Mr. Ibekie controls, by himself or with other individuals, defendants Green Airport Shuttle and Divvy Ride. Upon information and belief, Mr. Ibekie is the primary controlling force behind Green Airport Shuttle and Divvy Ride.

36. Upon information and belief, Green Airport Shuttle was incorporated in approximately January, 2008. Upon information and belief, prior to the events complained of herein, Green Airport Shuttle was intended to operate in the business of providing car rides to one or both of Chicago's airports. Green Airport Shuttle currently states on its website that, "Green Airport Shuttle is now DIVVYRIDE!". (Exh. E.)

37. Upon information and belief, Mr. Ibekie filed for incorporation of Divvy Ride

8

with the Illinois Secretary of State on January 23, 2015.

### G. *Defendants' DIVVY RIDE Ride Sharing Business*

38. Upon information and belief, and according to the Divvy Ride Website, Divvy Ride operates a ride sharing system through a website or mobile application whereby the website or mobile application pairs riders with a professional driver. (Exh. F.) Users can book rides through mobile applications downloaded from the iTunes App Store or GooglePlay, or can login to the Divvy Ride Website. Users have the option to "share a ride and split the fare" or "upgrade" to a private ride if they do not wish to share the ride.

### H. *Defendants' Use and Adoption of The DIVVY RIDE Mark After The City Had Adopted And Commenced Use of The DIVVY Marks*

39. Upon information and belief, due to both the immense publicity and fanfare associated with the launch of the DIVVY Bicycle Sharing System, and the ubiquitous presence in Chicagoland of the DIVVY Marks and Bicycle Trade Dress due to their prominent use in connection with the Bicycle Sharing System, Mr. Ibekie became aware of the DIVVY Marks and Bicycle Trade Dress by early 2014. Mr. Ibekie then made several public filings pertaining to the DIVVY RIDE name.

40. On February 17, 2014, after he had actual knowledge of The City's DIVVY Marks, Mr. Ibekie registered <divvyride.com> as a domain name.

41. On February 19, 2014, after he had actual knowledge of The City's DIVVY Marks, Mr. Ibekie filed a trademark application with the USPTO to register DIVVY RIDE for use in connection with "carpooling services, namely, matching drivers of motor vehicles with individuals needing rides" in International Class 39. The application received Serial No. 86/198,163.

42. On January 23, 2015, after he had actual knowledge of The City's DIVVY Marks,

9

Mr. Ibekie registered Divvy Ride, Inc. as a business with the State of Illinois.

43. Upon information and belief, in late winter 2015 or early 2016, Defendants first used in commerce the DIVVY RIDE Mark for their goods and services. Defendants' advertisements prominently featured the following: use of the DIVVY RIDE Mark, use of the Chicago Blue color, and the tag line "Chicago's Rideshare App" ("DIVVY RIDE Ads"). True and correct copies of certain DIVVY RIDE Ads are attached hereto. (E.g. Exh. G.)

44. Upon information and belief, Defendants engaged in the aforementioned commercial and filing activities *after* having actual knowledge of The City's advertising and use of the DIVVY Marks, having come to the conclusion that Defendants' use of "Divvy" and the Chicago Blue color would, due to The City's extensive efforts in promoting the DIVVY Marks, greatly enhance their newly planned transportation sharing venture.

I. *Defendants' Use of the DIVVY RIDE Mark Is Likely To Confuse Consumers*

45. Upon information and belief, Defendants' DIVVY RIDE Ads are a blatant attempt to trade on The City's goodwill in its DIVVY Marks and to confuse customers as to the association or sponsorship between The City and the Defendants' services.

46. The Defendants' conduct has created actual confusion as to whether The City is involved with, affiliated with, has sponsored, or is somehow the origin of, Defendants' DIVVY RIDE-branded products and services. Defendants are attempting to improperly ride on The City's coattails and capitalize on The City's success and goodwill by using an almost identical trademark. The DIVVY RIDE Mark and DIVVY Marks are nearly identical, have similar sounds, and similar commercial impressions, all the result of Defendants' intentional scheme to confuse the public and to benefit therefrom.

47. Because of, among other things, the nearly identical trademark, similarity in

customers, similarity in goods and services, similarity in trade channels, and same geographic area, consumers are likely to mistakenly believe that the DIVVY RIDE ride sharing system and the DIVVY Bicycle Sharing System are associated with each other, or that both are sponsored or somehow connected to The City, all to The City's detriment.

48. The Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

49. Defendants' actions have caused and continue to cause irreparable harm to The City, for which The City has no adequate remedy at law. Unless enjoined, Defendants will continue their wrongful actions, further injuring The City and confusing the public.

50. The City has suffered damage as a result of Defendants' actions.

### COUNT I
### Federal Trademark Infringement
### in Violation of Section 32 of the Lanham Act, 15 U.S.C. § 1115

51. The City repeats and realleges the allegations set forth in paragraphs 1-50 above.

52. The Defendants' use of the DIVVY RIDE Mark and derivations of the word "divvy," violate Section 32 of the Lanham Act, 15 U.S.C. § 1114, because they constitute willful and deliberate uses in commerce of reproductions, copies and/or colorable imitations of The City's federally registered DIVVY Marks for the sale, offering for sale, rendering of, distribution, and advertising of Defendants' products and services in a manner likely to cause confusion, mistake, and deception.

53. The Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

54. Defendants' actions have caused and continue to cause irreparable harm to The City, for which The City has no adequate remedy at law. Unless enjoined, Defendants will

continue their wrongful actions, further injuring The City and confusing the public.

55. The City has suffered damage as a result of Defendants' actions.

## COUNT II
### Federal Unfair Competition
### in Violation of Section 43 (a) of the Lanham Act

56. The City repeats and realleges the allegations set forth in paragraphs 1-55 above.

57. Defendants' use of the DIVVY RIDE Mark and derivations of the word "divvy," unfairly compete with The City's DIVVY Marks in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a). Defendants have willfully and deliberately used in commerce words, terms, names, and/or false designations of origin that are likely to cause confusion and mistake as to the origin, sponsorship, or approval by The City of goods distributed and services rendered and promoted by Defendants.

58. Defendants' use of the DIVVY RIDE Mark in connection with the identical shade of the Chicago Blue color, and prominent placement of the tagline "Chicago's Rideshare App," heightens confusion and were done in an effort to further unfairly compete with The City.

59. The Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

60. Defendants' actions have caused and continue to cause irreparable harm to The City, for which The City has no adequate remedy at law. Unless enjoined, Defendants will continue their wrongful actions, further injuring The City and confusing the public.

61. The City has suffered damage as a result of Defendants' actions.

## COUNT III
### Unfair Competition in Violation of the
### Illinois Uniform Deceptive Trade Practices Act

62. The City repeats and realleges the allegations set forth in paragraphs 1-61 above.

63. The foregoing acts of Defendants violate the Illinois Uniform Deceptive Trade Practices Act, 815 ILL. COMP. STAT. 510(2)(A). Defendants' deceptive trade practices have caused, and continue to cause, a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of services provided by Defendants under the DIVVY RIDE Mark.

64. Members of the general public are likely to be confused as to whether Defendants and their goods and services are affiliated with The City. This conduct has had, and will continue to have, an adverse impact on The City and on members of the general public because it wrongly suggests a cooperative business relationship that does not exist in fact. As a direct and proximate result of Defendants' unfair trade practices, members of the general public have mistakenly believed, and will continue to mistakenly believe, that Defendants' businesses, and the goods and services provided by Defendants, are approved or endorsed by, or otherwise affiliated with, The City.

65. The Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

66. Defendants' actions have caused and continue to cause irreparable harm to The City, for which The City has no adequate remedy at law. Unless enjoined, Defendants will continue their wrongful actions, further injuring The City and confusing the public.

67. The City has suffered damage as a result of Defendants' actions.

## COUNT IV
### Common Law Unfair Competition

68. The City repeats and realleges the allegations set forth in paragraphs 1-67 above.

69. Defendants' creation, adoption, and use in commerce of the DIVVY RIDE Mark unfairly competes with The City's DIVVY Marks.

70. Defendants have willfully, knowingly, and without The City's authorization promoted, advertised, and provided services that unfairly compete with The City's DIVVY Marks, created confusion in the marketplace, and harmed the goodwill The City has developed in the DIVVY Marks.

71. Defendants' use of the DIVVY Marks is likely to cause confusion, or to cause mistake, or to deceive customers and users as to the origin, sponsorship or approval of Defendants' goods and services and related commercial activities, and constitutes unfair competition in violation of the common law of the State of Illinois.

72. Defendants' use of the DIVVY RIDE Mark in connection with the identical shade of the Chicago Blue color, and prominent placement of the tagline "Chicago's Rideshare App," heightens confusion and were done in an effort to further unfairly compete with The City.

73. The Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

74. Defendants' actions have caused and continue to cause irreparable harm to The City, for which The City has no adequate remedy at law. Unless enjoined, Defendants will continue their wrongful actions, further injuring The City and confusing the public.

75. The City has suffered damage as a result of Defendants' actions.

## COUNT V
### Cancellation of United States Trademark
### Registration No. 4,837,493 for DIVVY RIDE

76. The City repeats and realleges the allegations set forth in paragraphs 1-75 above.

77. The City's first use in commerce of the DIVVY Marks pre-dates both Mr. Ibekie's filing of the trademark application for DIVVY RIDE, and Defendants' first use in commerce of the DIVVY RIDE Mark.

78. On February 19, 2014, upon information and belief, Mr. Ibekie filed an application with the USPTO for registration of the DIVVY RIDE Mark in Int'l Class 39 for use in connection with, "carpooling services in the nature of matching drivers and riders" (Ser. No. 86/198,163). The application was based on intent-to-use the mark in the future. Subsequently, Mr. Ibekie filed a Statement of Use asserting a date of first use of January 31, 2013 and date of first use in commerce of October 1, 2013. Upon information and belief, these dates of first use are inaccurate.

79. The City's DIVVY Marks registrations are valid and subsisting and are *prima facie* evidence of (among other things) The City's exclusive right to use the DIVVY Marks in commerce on the goods and services specified in such registrations.

80. In view of (among other things) the nearly identical trademark, similarity in customers, similarity in goods and services, similarity in trade channels, and same geographic area, Defendants' DIVVY RIDE Mark so resembles The City's DIVVY Marks previously used in the United States, and not abandoned, as to be likely to cause confusion, or to cause mistake, or to deceive as to source by suggesting that Defendants' services are associated with or approved, endorsed, affiliated, authorized or sponsored by The City, when they are not.

81. The Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

82. The foregoing acts constitute various forms of trademark infringement and unfair competition, and therefore pursuant to Section 14 of the Lanham Act, 15 U.S.C. §1064 and Section 37 of the Lanham Act, 15 U.S.C. § 1119, The City seeks cancellation of United States Trademark Registration No. 4,837,493.

**PRAYER FOR RELIEF**

WHEREFORE, The City respectfully seeks the following relief:

A. An order enjoining and restraining Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them (collectively hereafter, "Defendants"), from engaging in any of the following acts:

(i) Using or registering the term DIVVY RIDE, or any similar mark, in any manner whatsoever, either alone or as part of any other elements, including any trademark, trade name, corporate name or domain name;

(ii) Using any of the DIVVY Marks in any manner whatsoever, including in conjunction with other words, symbols or colors;

(ii) Using any trademarks, trade dress, trade names or domain names that are similar to the DIVVY Marks;

(iii) Using the word "divvy" alone or in any combination of words, colors or symbols in any form or manner, including without limitation, in the marketing, promotion, advertising, identification, sale or distribution of goods or services, that is likely to mistakenly identify or associate Defendants or their business or services with The City or its goods and services; and

(iv) Unfairly competing with The City in any manner whatsoever;

B. An order requiring Defendants, pursuant to 15 U.S.C. § 1118, to destroy all literature, signs, labels, prints, packages, wrappers, containers, advertising materials, Internet content, stationery, software, and any other items in their possession or control, as well as all plates, molds, matrices, masters, and other means of making any of those infringing items, that contain the terms DIVVY RIDE, DIVVY or any other term confusingly similar to the City's

DIVVY Marks, either alone or in combination with other words, colors, or symbols;

  C. An order directing the U.S. Patent and Trademark Office to cancel federal trademark Reg. No. 4,837,493;

  D. An order requiring Defendants to immediately transfer to The City the domain name <divvyride.com> and any other domain name in their possession, custody or control that includes the term "divvy";

  E. An order requiring Defendants to file with the Court and to serve on The City, within thirty (30) days after the entry of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

  F. Awarding The City the costs of this suit and its reasonable attorneys' fees in accordance with 15 U.S.C. § 1117 and Illinois law;

  G. Awarding The City monetary relief in an amount to be determined, such amount to be trebled pursuant to 15 U.S.C. § 1117; and

  H. Awarding such other and further relief as the Court deems just and proper.

Dated: May 5, 2016        Respectfully Submitted,

               By: /s/ Philip A. Jones

               Philip A. Jones (Illinois Bar No. 6217213)
               Genevieve E. Charlton (Illinois Bar No. 6312219)
               BARNES & THORNBURG LLP
               One North Wacker Drive.
               Suite 4400
               Chicago, IL 60606
               (312) 357-1313
               pjones@btlaw.com
               gcharlton@btlaw.com

               Diane M. Pezanoski (Illinois Bar No. 6190003)

                                              Fiona A. Burke (Illinois Bar No. 6273779)
City of Chicago, Department of Law
30 N. LaSalle Street, Suite 1400
Chicago, IL 60602
 (312) 744-6996
Diane.Pezanoski@cityofchicago.org
Fiona.Burke@cityofchicago.org


Attorneys for Plaintiff